UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : Criminal No. 05-377 |
| | : |
| v. | : |
| | : |
| DANIEL CROSBY, | : |
|     Defendant. | : |

STATEMENT OF THE OFFENSE

Pursuant to Fed. R. Cr. P. 11, defendant Daniel Crosby agrees and stipulates as follows:

In 2003, Daniel Crosby assisted a loan officer by the name of Charles Hall and others in a mortgage fraud scheme. Charles Hall recruited "straw buyers" with good credit by promising an "investment opportunity." Hall told the straw buyers that, if they paid him an investment fee of a few thousand dollars, he would find distressed homes in the District of Columbia for the buyers to purchase without paying the required "earnest money deposit" or "cash from borrower," and that he would then renovate the properties and pay the mortgage until the properties were renovated and could be resold.

Daniel Crosby assisted the conspiracy in many ways. One way was by finding run-down, inexpensive, properties in the District of Columbia. In the beginning of the scheme, Mr. Crosby found the distressed properties for purchase by co-conspirator Alan R. Davis. (Later, Mr. Crosby found properties for another person to buy and sell). Both Davis and the other person bought and sold properties, typically, on the same day. For example, on March 27, 2003 a person purchased 1325 Longfellow Street, N.W. for $220,000 and sold it on the same day for $420,000 - a difference of $200,000. On March 28, 2003 a person bought 17 Seaton Place, N.E. for $260,000 and on the same day, sold it for $525,000, over double the purchase price. On April 28, 2003

another person bought 1423 New Jersey Avenue, N.W. for $180,000, and the next day sold it for $533,000, over three times the previous day's price.

Mr. Crosby also assisted the scheme by researching the sales prices of other properties from the same neighborhood (data known in the trade as "comps"). At the request of Alan Davis (or Charles Hall), Mr. Crosby researched the prices of houses which were in the same, not renovated, condition as the subject properties in order to assist Alan Davis (or the other person) to determine the appropriate buying price to offer for the un-improved house. Then, Mr. Crosby (again at the request of Davis and/or Hall) researched the prices of houses which had already been renovated, so that Alan Davis and Charles Hall would know the price to sell the property to the straw buyers.

No one repaired or renovated the properties before they were purchased and then quickly resold to the straw buyers at a substantially higher price. In order to obtain mortgage loans to pay the substantially higher resale prices, another co-conspirator by the name of Robbie L. Colwell appraised the properties as if they had already been renovated. Colwell's appraisals often referred to the "overall complete renovation" noting "new roof, windows, new kitchen, bathrooms, new floors." Robbie Colwell sent by electronic mail many of these appraisals to Mr. Crosby. Mr. Crosby, having seen many of the properties, knew or should have known that the properties had not been renovated and that the appraisals were false. These appraisals, which dramatically overstated the value of the properties, justified the higher mortgage amounts loaned to the straw buyers.

Daniel Crosby also assisted in creating or gathering various documents necessary for the two sales. For example, typically, it would be Mr. Crosby who gave the real estate contract for

the first sale to Vicki Robinson, the title and escrow agent, or "settlement agent." This first sale would show the initial price paid by Alan Davis (or another) for the first purchase. With respect to this second, flipped sale, Mr. Crosby also assisted by obtaining insurance, which was required by the lenders in order to secure the mortgage loans.

Daniel Crosby was present at the real estate settlement proceedings for the first sales and would not receive commission payments for the first sales until after the second sales. After the second sales, that is, after the straw purchasers bought the properties, the proceeds of the inflated sales prices were distributed to the co-conspirators, including Daniel Crosby. Charles Hall (or his company) received a large amount of the money through falsely representing that it was money for rehabilitation. In truth, the vast majority of the money was not used for renovation, nor were the properties renovated. Mr. Crosby received money directly from the settlement company as reimbursement for expenses and "assignment of fee;" he also received commissions on each of the first sales from the real estate company.

Because the properties were not renovated, and because of the artificially inflated mortgage loans, the straw buyers were not able to resell the properties for the amount of the loans; upon default and foreclosure, the lenders were not able to recoup the money which they had loaned. Mr. Crosby assisted Hall and others in the fraudulent buying and selling of nine properties between February 2003 and May 2003. The mortgages on all of these nine properties have been defaulted and foreclosed and all but one have been resold at a loss. The lenders, Guaranty Residential Lending and National City Mortgage, resold these nine properties for less than the mortgage loans, and, as a result, have lost in excess of $1.3 million. Guaranty Residential Lending, Inc., a subsidiary of Guaranty Bank, and National City Mortgage Co., a

subsidiary of National City Corporation, are financial institutions whose deposits are insured by the Federal Deposit Insurance Corporation.

In sum, up until the spring of 2003, Daniel Crosby agreed with co-conspirators to engage in a scheme to defraud and obtain money from financial institutions. In furtherance of the agreement, Mr. Crosby and his co-conspirators committed various overt acts, including Mr. Crosby receiving false appraisals from a co-conspirator sent from the District of Columbia to the State of Maryland, by the use of interstate wires, to support the artificially high prices of the second sales. Mr. Crosby intentionally joined this conspiracy, agreed with others, and he and others committed overt acts, some of which occurred in the District of Columbia, resulting in fraud against the lenders.

Respectfully submitted,

KENNETH L. WAINSTEIN
United States Attorney
for the District of Columbia

By: _____
VIRGINIA CHEATHAM
Assistant U.S. Attorney
Bar No. 411980
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-9732

## DEFENDANT'S ACCEPTANCE

I have read every word of this Statement of Offense. Pursuant to Fed. R. Cr. P. 11, after consulting with my attorney, I agree and stipulate to this Statement of Offense, and declare under penalty of perjury that it is true and correct.

Date: 11/1/05

_____
Daniel Crosby
Defendant

I concur with his decision to stipulate to this Statement of Offense.

Date: 11/1/05

_____
Curtis A. Boykin
Attorney for the Defendant