**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 05-377 (RWR) |
| | ) | |
| | ) | |
| DANIEL CROSBY, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM AND**
**MOTION FOR DOWNWARD DEPARTURE PURSUANT TO U.S.S.G. §5K1.1**

On November 1, 2005, pursuant to a plea agreement negotiated with the United States of America, Mr. Daniel Crosby ("Mr. Crosby" or "Defendant"), entered a plea of guilty to one count of Conspiracy to Commit Crimes against the United States – Bank Fraud in violation of 18 U.S.C. § 371.

**I.    INTRODUCTION**

On February 23, 2007, in anticipation of Defendant's sentencing scheduled for March 9, 2007, the United States filed a consolidated motion for a downward departure pursuant to U.S.S.G. §5K1.1 and memorandum in aid of sentencing.  As grounds for the motion for downward departure, the United States explained that Defendant is entitled to a sentence reduction for his "substantial cooperation with law enforcement."[1]

---

1    We agree with the basis of United States' recommendation inasmuch as it correctly identifies the relevant factors that the Court may consider in determining the appropriate reduction: *i.e.,* the court's evaluation of the significance and usefulness of the defendant's assistance (based in part on the government's evaluation); the truthfulness, completeness, and reliability of information and testimony provided by the defendant, and the nature, extent and timeliness of the defendant's assistance.  *See* U.S.S.G. §5K1.1 and commentary (substantial assistance in the prosecution of another person who has committed an offense may justify a

While Mr. Crosby's agrees that a downward departure is warranted, he believes the level of the government's recommended departure falls short of being just.  Given the limited nature of Mr. Crosby's involvement in the criminal conspiracy, his initial lack of appreciate of the criminality of the activity, the assistance he provided to law enforcement, his remorse, and comparable sentences for the other co-defendants involved, a departure to an offense level of 8 versus that of 10 as recommended by the Government is warranted.  Under an offense level of 8, a sentence of probation would be a just and fair punishment.

**II.    ARGUMENT**

**A.    The Court Has Discretion to Impose a Sentence that Departs from the U.S.S.G. So Long as It is Otherwise Reasonable.**

*United States v. Booker,* 125 S. Ct. 738 (2005) makes it plain that a sentencing judge is not bound by the United States Sentencing Guidelines.  Thus, this Court may accept the recommendation proffered by the government in its Consolidated Motion Pursuant to Federal Sentencing Guidelines §5k1.1 and Memorandum in Aid of Sentencing[2] as the limit of what the Government can do; however, the Court may exercise its broad discretion to impose a  lesser sentence that is otherwise reasonable.  *See e.g., United States v. Coles,* 403 F.3d 764, 769 (D.C. Cir. 2005) (a sentencing judge is not bound by the Guidelines).  Mr. Crosby respectfully submits

---

sentence below a statutorily required minimum sentence; and, substantial weight should be given to the government's evaluation of the extent of the defendant's assistance, particularly where the extent and value of the assistance are difficult to ascertain.).  As the government's analysis makes plain, Mr. Crosby's assistance was very useful to the United States in its prosecution of the principal conspirator, and thus, he has met the recognized criteria for a downward departure.

2        Hereinafter referred to as the "Government's Memorandum."

that good cause exists for the Court to exercise its discretion in departing further downward than
was recommended by the Government.

In the Government's Memorandum, the United States identifies and describes in detail
the actions of several members of the conspiracy including the Loan Officer (Charles E. Hall,
Sr.); the Appraiser (Robbie Colwell); the Underwriters (Marcus Wiseman and Susan Conner);
the Speculator (Alan Davis); and the Real Estate Agent (Daniel Crosby).

Of all the forgoing persons, it is clear that Mr. Crosby is the least culpable.  First, the
conspiracy was on-going when Mr. Crosby became involved.  The Criminal Information to
which Mr. Crosby pled places Mr. Crosby's involvement between February 2003 and May 2003,
long after the criminal conspiracy had formed and started operating, and he disengaged when he
realized that law enforcement was investigating the actions of the loan officer, settlement agent
and speculator.

Second, throughout the greater part of Mr. Crosby's participation, he was acting at the
behest of others in an effort to earn their trust and favor in business; he did not obtain sufficient
knowledge to understand that the acts complained of were criminal until at best March or April,
2003.  For instance, Mr. Crosby completed his District of Columbia real estate certification in
February 2003.  While learning his new trade, he was tutored by Alan Davis and others who had
been in the real estate business for several years.   Alan Davis and/or Charles Hall instructed Mr.
Crosby to provide "comps" (research of comparable prices of other comparable properties from
the same neighborhood) to determine the appropriate buying price to offer for unimproved
houses. *See* the Government's Memorandum at 6.  Mr. Crosby voluntarily complied.  Then, as
the Government notes, (again at the request of Davis and/or Hall), Mr. Crosby researched the

prices of houses which had already been renovated, so that Davis and Hall would know the price to sell the property to the straw buyers.  *Id.*  Mr. Crosby was eager to oblige Hall and/or Davis to establish a closer relationship with people he viewed as "players" in the District of Columbia real estate industry.[3]

When asked by Hall and/or Davis, Mr. Crosby provided documents to show that the hazard insurance was purchased in order to facilitate the second sale of the "flipped" property. Once again, Mr. Crosby did as he was told by Hall and/or Davis.

No member of the conspiracy ever shared with Mr. Crosby the big picture of what was taking place insofar as the operation of the conspiracy was concerned.  Thus, when viewing his actions in isolation, such as providing comps, gathering documents pursuant to individual requests to affect closing of a property's sale, or working under more experienced realtors, were not *per se* illegal or suspect.   To the contrary, Mr. Crosby was told that the "flipped" sales were legal and were described as "coinciding settlements."

Mr. Crosby admits that he should have paid closer attention to the appraisals and the representations made therein and that his failure to do so is not excusable.  In hindsight, he realizes that the transactions made little sense; he had never learned of a coinciding settlement in his real estate classes, and that he should have known that a first buyer had to bring cash to the table at a closing.  But in his defense, we submit, consideration should be given to the fact that he was a neophyte in the business; he had just got his real estate license and was trying to gain the trust and respect of more experienced real estate professionals.  Mr. Crosby, however,

---

3      The Government acknowledges that Mr. Crosby presented himself as a dispassionate witness, although slightly gullible.  The Government's Memorandum at 8.

accepts responsibility for his conduct.  He was the last co-conspirator approached by law enforcement, and as soon as he was approached, he agreed to cooperate, enter his plea, and provide substantial assistance to the government in its prosecution of the co-conspirators.  Mr. Crosby is not minimizing the seriousness of his offense; rather, as a supplicant, he pleads with the Court to provide greater leniency.

       **B.**      <u>Defendant Urges the Court for a More Substantial Downward Departure Based Upon the Nature, Extent and Timeliness of Assistance to the Government.</u>

Upon the entry of his plea Mr. Crosby was told and therefore expected that if he cooperated with the United States, made timely admissions, and gave substantial assistance, the government would recommend that less time be served.  In an effort to meet his obligation, Mr. Crosby met with the United States and its agents on several occasions for hours of interviews and questioning, answering all of the Government's questions related to the Hall conspiracy as well as other criminal or suspicious activity without objection or reservation.  During these sessions Mr. Crosby was able to assist the Government and made it aware of ways in which Charles Hall disposed of fraudulently-obtained money.  *See* The Government's Memorandum at 8.  Furthermore at trial, the Government was aided in obtaining its conviction through his "compelling testimony about the lies and misrepresentations that Hall had told him."  *Id.*

       **C.**      **An Offense Level of 8 Would Be Consistent with the Range of Punishment <u>Imposed on Other Co-Conspirators.</u>**

Charles E. Hall, Sr., the Loan Officer and the central person to the conspiracy, elected to go to trial and on August 3, 2006, a federal jury convicted him of all eight counts of the Indictment charging him with conspiracy, bank fraud, wire fraud, and conspiracy to launder money.  He was sentenced to 293 months of incarceration.

Robbie Colwell, the person who fraudulently presented himself as an appraiser and wrote false appraisals on each of the properties was sentenced to 46 months incarceration.

Alan Davis, one of the Speculators who evidently had full knowledge of the conspiracy's operation was sentenced to ten months incarceration.

Susan Conner, the other Underwriter who approved each of the loans, was sentenced to one month incarceration, nine months in home detention, and three years of supervised release. Marcus Wiseman, another Underwriter involved who evidently approved many of the loans was sentenced to five years probation.

As argued above, Daniel Crosby was the least culpable of the co-conspirators. Given the range of punishment imposed on others involved in the conspiracy, probation would not be inconsistent.  An offense level of 8, (two levels below what the Government has requested), would make Mr. Crosby eligible for probation.  Where, as we urge here, a defendant's offense level calculation is in a Zone A category, probation may be used an alternative to incarceration, provided that the terms and conditions of probation can be fashioned so as to meet fully the statutory purposes of sentencing, deterrence, and protecting the public from further crimes by the defendant.  *See* U.S.S.G. § 5B1.1(a)(1) (a sentence of probation is authorized if:  the applicable guideline range is in Zone A of the Sentencing Table.).

It is clear from Mr. Crosby's conduct upon entry of his plea, and further, based upon his cooperation, acceptance of responsibility and assistance to the Government, he has demonstrated contrition and is sufficiently deterred from ever again engaging in criminal conduct.

6

Mr. Crosby has been forthcoming about his involvement with his present employer Ed White, who is a real estate broker and a retired police officer. Mr. White wrote a letter in support of Mr. Crosby stating the following:

> *"I believe if given a chance Mr. Crosby can be trusted and brings a stellar quality to our industry. Although I cannot speak for transactions that occurred prior to Mr. Crosby joining my company, I can tell you that he has established himself as a man of character and responsibility in my eyes as well as our entire office."*

*See* attached letter dated Feb. 28, 2007 to The Honorable Richard Roberts. We respectfully submit that this Court's leniency would not be misplaced.

### D.    Other Key Factors Support Mitigation of Defendant's Sentence.

This is Mr. Crosby's first criminal offense at age 33. He is married with two young sons ages 5 and 3. *See* Presentence Investigation Report (hereinafter "PSIR") at 9 ¶ 48. Since his graduation from college, Mr. Crosby has always been gainfully employed. *Id.* at 11-12 ¶¶ 56-62. Although growing up, Mr. Crosby was not close to his father in contrast he has been a loving and constant presence in his sons' lives. *Id.* at 8-9 ¶¶ 44-45. Mr. Crosby's wife is fully supportive of him despite the fact he is facing incarceration. *Id.* at 9 ¶ 49. Mrs. Crosby and other family members believe that this situation is completely out of character for Daniel. Their letters of support (attached) buttress their views.

Any period of incarceration will impose a significant financial hardship on the Crosby family; that is, Mr. Crosby who is self-employed will have no income and the family will be entirely dependant on his wife's income she earns as a registered nurse. Mr. Crosby's ability to pay restitution will also be impaired. *See* PSIR at 12 ¶ 63. In addition, with Mr. Crosby

unavailable to take his children to school, Mrs. Crosby's home life and employment will be impacted.

  If Mr. Crosby were to be sentenced to probation, (or home detention), the impact on his family will be lessened to the degree that there will be someone to care for the children while Mrs. Crosby continues to work.  In addition, if sentenced to probation, Mr. Crosby may be able to continue working so that he can repay any sentence of restitution.

### III. <u>CONCLUSION</u>

  WHEREFORE, Mr. Crosby prays the Court will depart downward and sentence him to a term of probation.

       Respectfully submitted,

       DANIEL CROSBY

        */ S /*

       By:_____
       Douglas & Boykin <small>PLLC</small>
       Frederick A. Douglas  (# 197897)
       Curtis A. Boykin (# 444120)
       1850 M Street, NW – Suite 640
       Washington, DC  20036
       (202) 842-1800, voice
       (202) 842-1829, facsimile
Date:   March 2, 2007    *Attorneys for Daniel Crosby*

<u>CERTIFICATE OF SERVICE</u>

This is to certify that on this 2nd day of March, 2007, a true copy of the foregoing Defendant's Sentencing Memorandum and Motion for Downward Departure Pursuant to U.S.S.G. §5K1.1 was served via electronic mail upon:  Virginia Cheatham, Assistant United States Attorney.

/ S /

_____

Curtis A. Boykin